**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

ANGELA FIELDS                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 3:16-CV-839-HTW-FKB

MISSISSIPPI DEPARTMENT OF HUMAN SERVICES              DEFENDANT

**REBUTTAL BRIEF IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The Mississippi Department of Human Services ("MDHS"), by and through

counsel, submits this rebuttal brief in support of its motion for summary judgment,

pursuant to Fed. R. Civ. P. 56, and would show unto the Court as follows:

### 1. Failure to Accommodate claim

In her Complaint, Fields states that "in June 2015, the Plaintiff submitted medical

statements to the Defendants which advised of her limitations and requested reasonable

accommodations." [1], p. 4. Fields stated in the EEOC charge which preceded this cause

of action that she submitted doctors' statements to MDHS "[i]n June, July, and August

2015." *Ex. 1, EEOC Charge of Discrimination*. In her deposition in this matter, Fields

testified as follows: "I made the request for accommodations. I submitted my medical

forms and stuff in June of '15." [24-1], p. 35. Now, in the memorandum brief in support

of her opposition to MDHS's motion for summary judgment, Fields asserts for the very

first time that she first requested an accommodation from MDHS in July **2014**. [30], p. 3.

In support of this assertion Fields offers a letter purportedly written by Dr. Brian Johnson

on June 24, 2014. [30-1]. This letter was never presented to MDHS, it was not presented

to the EEOC, and it was it ever produced in discovery in this action. MDHS does not know whether the date of July 2014 is a typo. That question would have to be answered by Dr. Johnson. Regardless, the letter should not be considered by the Court in ruling on MDHS's motion for summary judgment.

During her deposition, Fields was asked whether she could identify anyone who DHS allowed to remain in the position of Family Protection Specialist - Advanced and not do frontline field work. [24-1], p. 48. Fields responded as follows:

> I -- I -- I don't know what some of these people -- the -- the -- their titles. I -- that -- this was a big group, big -- I --  you know, people were coming and going. I -- I can't -- I'm not part of personnel. I can't tell you exactly what everybody was named, what their title was because I was -- I was not anybody's supervisor.

*Id*. Now, in support of her response to DHS's motion for summary judgment, Fields has submitted her own affidavit, wherein she states under oath that "two female employees in the classification [of Family Protection Specialist], Monica Weathersby and Sharon Douglas, were not assigned field work." [29-8], p. 1.

Sharron Douglas handled some intake work on an as-needed basis. However, she did that while still maintaining a full caseload and engaging regularly in field work. *Ex. 4, Affidavit of Viedale Washington*. For the sake of illustration, Below are caseload numbers for Fields and Douglas during the relevant time period:

A)      December 31, 2014 - Sharron Douglas had 44 open files. Angela Fields had 10.

B)      July 6, 2015 - Sharron Douglas had 21 open files. Angela Fields had 12.

C)   January 1, 2016 - Sharron Douglas had 20 open files. Angela Fields had 10. *Id*. The files of both Douglas and Fields required field work. *Id.* Monica Weathersby, on the other hand, is classified as a Licensure Specialist. *Id*. At the time of Fields' departure from DHS, Weathersby's salary was $33,281.05, which was $4,324.44 less than Fields' salary of $37,605.49. *Id*. As is discussed below, Fields was emphatic that she could not take a reduction in salary.

Fields asserts that DHS falsely represented to the EEOC that "positions had been identified and refused." *[30], p. 5*. This is absolutely false. DHS's position statement represents the following:

> Positions have been identified that would meet the requirements of her medical statement. However, Ms. Fields has repeatedly stated that she does not wish to take a lesser paying position. As a result the agency continues to search for a position that would accommodate her needs in compliance with her medical restrictions.

*DHS Position Statement to EEOC, [29-11], p. 3*. DHS's representation above is a comlete and correct statement of fact. Ms. Fields herself testified that she simply could not afford a reduction in pay and "could not take a demotion." *Deposition of Fields [24-1], pp. 56-57*. She advised DHS of this in a memo dated August 13, 2015. *Ex. 2, Fields 8/13/15 memo to DHS*. Fields had also conferred with Darren Vandevender in HR at DHS no later than September 25, 2015 and advised him that she could not take a pay cut. *Ex. 3, E-mail thread between Fields and Vandevender*.

Fields was not a "qualified individual," because she could not perform the essential functions of her job with or without accommodation. She admitted during the interactive process that she could not perform the essential functions of her position. "I

can't sit here and say what job, but that I can work from a desk and do a great job at what I can offer. I can perform essential functions of jobs that are office jobs." *Ex. 2, Fields 8/13/15 memo.* For this reason, alone, her failure to accommodate claim must fail.

Even if Fields were a "qualified individual," DHS offered her a reasonable accommodation. Specifically, MDHS found, and offered to Fields, a different position which would comport with her medical restrictions. This position came with a lower salary. Such an offer is perfectly in line with previous decisions by the Fifth Circuit. *Bruff v. North Mississippi Health Srvs., Inc.*, 244 F. 3d 495, 502 (5th Cir. 2001) (held that a proposed accommodation which required an employee to take a significant reduction in salary was not unreasonable); *Eversley v. MBank Dallas*, 843 F. 3d 172, 176 (5th Cir. 1988) (citing *Ansonia Board of Education v. Philbrook*, 479 U.S. 60, 107 S.Ct. 367, 93 L. Ed. 2d 305 (1986)) (held that the employer's proposed accommodation was not unreasonable "simply because . . . it . . . involv[ed] some cost to the employee.").

Fields apparently wanted other people doing the field work for her position so that she could remain at a desk. The law "provides a right to reasonable accommodation, not to the employee's preferred accommodation.' " *Martel v. Evangeline Parish School Board*, No. 10-00878, 2012 WL 3637614, *8 (W.D. La. Aug. 21, 2012) (quoting *EEOC v. Agro Distrib.*, 555 F. 3d 462, 471 (5th Cir. 2009)). Furthermore, "an accommodation that would result in other employees having to work harder or longer is not required under the ADA." *Pegues v. Mississippi State Veterans Home*, 736 F. App'x 473, 477 (5th Cir. 2018) (quoting *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1094 (5th Cir. 1996)).

### 2. Retaliation claim

The first alleged act of retaliation of which Fields complains is that she was given a written reprimand for contacting Dr. Chandler's office regarding her accommodation request, thereby violating the chain of command. Fields admits that she called Dr. Chandler's office and attempted to speak with him regarding her request for accommodations. *Deposition of Fields [24-1], pp. 92-93.*

Fields asserts that "[t]he reprimand was inserted in Plaintiff Field's personnel file and was to remain indefinitely," and "was to become part of the Plaintiff Field's personnel record." [30], p. 7. Yet, Fields admitted in her deposition that the subject reprimand was ultimately rescinded by DHS. *Deposition of Fields [24-1], pp. 91-92.* As such, it does not remain in her personnel file. Regardless, the Fifth Circuit has routinely held that a written reprimand, without evidence of consequences, does not constitute an adverse employment action. *See Hernandez v. Johnson*, 514 Fed. Appx. 492, 499 (5th Cir. 2013); *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 Fed. Appx. 437, 442 (5th Cir. 2007). Fields has not demonstrated, and cannot demonstrate, that the reprimand had any consequence upon the terms and conditions of her employment, either before or after the reprimand was rescinded.

In her rebuttal, Fields again asserts that the offer of a demotion constituted retaliation. Fields can offer no authority to support her assertion that being offered a demotion as a reasonable accommodation constituted an adverse employment action. Again, a demotion was forced upon Fields. No action was taken. Fields turned down the offer of a demotion and remained in her position until she voluntarily retired. Therefore, no adverse employment action could have been taken. Fields has failed to make a *prima facie* case for retaliation, and that claim

must fail.

*Conclusion*

For the foregoing reasons, and for the reasons set forth in the original

memorandum brief in support of summary judgment, MDHS respectfully requests that

this Court grant its Motion for Summary Judgment.

Respectfully submitted this the 7th day of June, 2019.

**MISSISSIPPI DEPARTMENT OF HUMAN
SERVICES, DEFENDANT**

**JIM HOOD, ATTORNEY GENERAL
STATE OF MISSISSIPPI**

**BY:   BENNY M. MAY, MSB NO. 100108**

Office of the Attorney General
Civil Litigation Division
Post Office Box 220
Jackson, Mississippi 39205
Telephone: (601) 359-3680
Facsimile: (601) 359-2003
e-mail: *bemay@ago.state.ms.us*